UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE WANG, | Case No. 19-cv-05370-EMC |
| Plaintiff, | |
| v. | **ORDER DEFERRING IN PART; GRANTING IN PART; AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| CITY OF CLEAR LAKE, et al., | |
| Defendants. | Docket No. 29 |

Plaintiff Jane Wang has filed suit against her former employer, the City of Clearlake, and two of its employees, Greg Folsom (City Manager) and Doug Herron (Director of Public Works). She asserts, for the most part, claims for employment discrimination based on sex and/or race. Currently pending before the Court is the City's motion to dismiss the operative first amended complaint ("FAC").

## I.    FACTUAL & PROCEDURAL BACKGROUND

In the FAC, Ms. Wang alleges as follows.

Ms. Wang is an Asian woman.  She began to work for the City in September 2017.  *See* FAC ¶ 9.  Although not entirely clear, it appears that she was hired to work as a City Engineer and/or Deputy Director of Public Works.  *See* FAC ¶¶ 12, 75.

Immediately upon her tenure, Mr. Herron – the Director of Public Works – began to ask Ms. Wang out for drinks and/or food.  *See* FAC ¶ 9.  He also made comments about her body and showed off his body to her.  *See* FAC ¶ 9.  In addition, he seems to have suggested that Mr. Folsom (the City Manager) was also interested in her.  *See* FAC ¶ 9.  At one point, Ms. Wang rebuffed Mr. Herron, refusing to go out with him.  He thereafter denied her the use of a

government car, "saying the type of car didn't fit for a female like her to drive." FAC ¶ 9.

It appears that, subsequently, Mr. Herron – along with Mr. Folsom – subjected her to other conduct. For example:

- They did not allow her to order supplies "even though she had a supply budget to use."
- They did not invite her to work meetings even though other City Engineers or Deputy Directors were invited to the same meetings.
- They did not invite her to trainings and, if she was invited, "[s]he was not allowed to stay overnight [even] if the training was far away from the office."
- They blamed her for work done by her co-workers, which was done without her approval.
- They did not allow her to use a government car for business travel, such that she was forced to use her own car.

FAC ¶¶ 10-12. Non-Asian men were not subjected to the same conduct. *See* FAC ¶ 10.

Ms. Wang reported the conduct of Mr. Herron and Mr. Folsom to her supervisor – and apparently even the two men themselves – but the City did not take any steps to address the conduct. *See* FAC ¶ 13.

In addition to the above, Ms. Wang alleges that, on several occasions in September and October 2017, she heard her co-workers "making fun" of photos of slum areas in China. FAC ¶ 11. Ms. Wang reported the conduct to her supervisor, as well as Mr. Herron and Mr. Folsom, but nothing was done to address the conduct. *See* FAC ¶ 11.

In November 2017, just a few months after she started working for the City, Mr. Herron and Mr. Folsom terminated her employment with the City, "ostensibly because [she] would not refrain from managerial duty." FAC ¶ 14. (It is not clear from the FAC what Ms. Wang means by "refrain[ing] from managerial duty.").

Based on, *inter alia*, the above allegations, Ms. Wang has asserted the following causes of action:

(1) Sexual harassment/quid pro quo – against all Defendants (pursuant to Title VII and

FEHA).

(2) Sexual harassment/hostile work environment – against all Defendants (pursuant to Title VII and FEHA).

(3) Retaliation (*i.e.*, termination based on Ms. Wang's complaints about sexual harassment) – against all Defendants (pursuant to Title VII and FEHA).

(4) Intentional infliction of emotional distress ("IIED") – against all Defendants.

(5) Wrongful termination in violation of public policy – against the City only.

(6) Negligent hiring, training, and retention – against the City only.

(7) Discrimination based on race, color, and/or national origin – against all Defendants (pursuant to Title VII and FEHA).

(8) Breach of implied contract and/or covenant of good faith and fair dealing – against all Defendants.

(9) Violation of the Equal Pay Act – against all Defendants.

## II. DISCUSSION

A. City's Arguments

In its motion to dismiss, the City makes a number of arguments:

- Because there is a pending state court action based on the same underlying facts, the Court should decline to exercise jurisdiction pursuant to the *Colorado River* doctrine.

- If the Court does exercise jurisdiction, all federal claims should be dismissed because (1) the Title VII claims (for sexual harassment/quid pro quo, sexual harassment/hostile work environment, retaliation, and race discrimination) are untimely and (2) Ms. Wang has failed to state a claim for a violation of the Equal Pay Act.

- If the Court dismisses the federal claims (*i.e.*, the Title VII and Equal Pay Act claims), then it should decline to exercise supplemental jurisdiction over the state law claims.

- If the Court does consider the state law claims (based on FEHA and the common

law), they are deficient because, *e.g.*, (1) Ms. Wang did not present her common law claims to the City before she filed suit[1]; (2) the common law claims for wrongful termination and breach of contract cannot be asserted against a public entity; (3) the common law claims for IIED and negligent hiring, training, and retention are barred based on the exclusive remedy provided by the workers' compensation system; (4) the FEHA and common law claims are based on conclusory allegations only; and (5) punitive damages cannot be asserted against a public entity.

B.      *Colorado River*

The City's first argument is that this Court should decline to exercise jurisdiction over the instant case – or at the very least, stay the instant case – based on the *Colorado River* doctrine. *See Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 841 (9th Cir. 2017) (noting that, although "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,' including in cases involving parallel state litigation," a court may abstain "[u]nder 'exceedingly rare' circumstances[] [based on] 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'"). The City has asked the Court to take judicial notice of the fact that, in October 2018, Ms. Wang filed a suit in state court against the same three defendants as here (*i.e.*, the City, Mr. Folsom, and Mr. Herron) and based on essentially the same underlying facts. *See* RJN, Ex. B (state court complaint). Although the instant case involves some different causes of action, there are many shared causes of action between the state and federal court cases, in particular:

(1) Sexual harassment/quid pro quo.

(2) Sexual harassment/hostile work environment.

(3) Retaliation.

(4) IIED.

---

[1] *See Garcia v. L.A. Unified Sch. Dist.*, 173 Cal. App. 3d 701, 710 (1985) (noting that "[a]ctions brought under the Fair Employment and Housing Act (FEHA), California's own statutory scheme to combat employment discrimination, have also been held exempt from the claim-presentation requirements of the general tort claims act").

1   (5) Wrongful termination in violation of public policy.

2   (6) Negligent hiring, training, and retention.

3   The causes of action asserted in this case, but not in the state court case, are: (7) race

4   discrimination; (8) breach of implied contract and/or covenant of good faith and fair dealing; and

5   (9) violation of the Equal Pay Act.

6       As the Court stated at the hearing on the motion, the Court defers ruling on the request to

7   stay pursuant to *Colorado River*. This is based on Ms. Wang's statement at the hearing that she

8   intends to dismiss her state court action. If Ms. Wang does dismiss her state court action, then the

9   City's *Colorado River* argument is moot (as the City conceded at the hearing). If she does not, the

10  Court will rule on the stay request.

11  C.    Federal Claims

12      1.    Title VII Claims

13      The City argues that Ms. Wang's Title VII claims are all time barred. Title VII provides in

14  relevant part as follows:

15          If a charge filed with the Commission pursuant to subsection (b) is
            dismissed by the Commission . . . , the Commission . . . shall so
16          notify the person aggrieved and within ninety days after the giving
            of such notice a civil action may be brought against the respondent
17          named in the charge . . . by the person claiming to be aggrieved . . . .

18  42 U.S.C. § 2000e-5(f)(1); *see also Scholar v. Pac. Bell*, 963 F.2d 264, 267 (9th Cir. 1992) (noting

19  that "[t]he language of the statute establishes the 90-day period as running from the 'giving of

20  such notice' rather than from the date claimant actually 'receives' notice in hand"). Here, the City

21  has asked the Court to take judicial notice of the Notice of Right to Sue that was issued by the

22  EEOC in response to Ms. Wang's charge of discrimination. The Notice appears to have been

23  mailed on August 29, 2018. *See* Def.'s RJN, Ex. A (notice). The Notice states, on its face, that

24          [y]ou may file a lawsuit against the respondent(s) under federal law
            based on this charge in federal or state court. Your lawsuit **must be
25          filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your
            right to sue based on this charge will be lost. (The time limit for
26          filing suit based on a claim under state law may be different.)

27  RJN, Ex. A (emphasis in original). Assuming that Ms. Wang received the notice three days after

28  the mailing date of August 29, 2018, the City argues that "[t]he 90-day limitations period . . .

began to run on September 1, 2018," and ended on November 30, 2018; however, Ms. Wang did not file her federal action with the Title VII claim until August 27, *2019* (*i.e.*, some eight months after the limitations period expired).  *See* Docket No. 1 (complaint).

In response, Ms. Wang does not dispute that the Notice was mailed on August 29, 2018. In fact, in her FAC, she alleges that, "[o]n or around August 29, 2018, the EEOC issued Plaintiff Notices of Right to Sue."  FAC ¶ 5.  She suggests, however, that the statute of limitations should be tolled for two reasons: (1) she was ill during the relevant period and (2) the EEOC gave her confusing and/or incorrect information about the statute of limitations.  These reasons are not articulated in her FAC but rather in a declaration that she attached to her opposition brief.

The Ninth Circuit has held that the Title VII statute of limitations may be equitably tolled in certain circumstances.  More specifically,

> relief from strict construction of a statute of limitations is readily available in extreme cases and gives the court latitude in a case-by-case analysis.  The equitable tolling doctrine has been applied by the Supreme Court in certain circumstances, but it has been applied sparingly; for example, the Supreme Court has allowed equitable tolling when the statute of limitations was not complied with because of defective pleadings, when a claimant was tricked by an adversary into letting a deadline expire, and when the EEOC's notice of the statutory period was clearly inadequate.  Courts have been generally unforgiving, however, when a late filing is due to claimant's failure "to exercise due diligence in preserving his legal rights."

*Scholar*, 963 F.2d at 268; *see also Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (stating that equitable tolling may be applied "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or "when extraordinary circumstances beyond the plaintiff's control [such as severe mental incapacity], made it impossible to file a claim on time").  The Ninth Circuit has also noted that,

> [b]ecause the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it "is not generally amenable to resolution on a Rule 12(b)(6) motion."  A motion to dismiss based on the running of the statute of limitations period may be granted only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." . . . For this reason, we have reversed dismissals where the applicability of the equitable tolling doctrine depended upon factual questions not clearly resolved in the pleadings.

> Similarly, we must reverse if the factual and legal issues are not sufficiently clear to permit us to determine with certainty whether the doctrine could be successfully invoked.

*Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995).

In the instant case, Ms. Wang's FAC on its face does indicate a statute-of-limitations problem. However, as stated above, she has now articulated in her opposition brief/declaration reasons why she should be allowed to amend her pleading to assert a basis for equitable tolling. Unless the reasons would be futile, Ms. Wang should be permitted to amend.

To the extent Ms. Wang claims that she did not timely file her Title VII claim because she was sick, the Court finds that position futile. In her opposition brief, she asserts that she had "[p]hysical or mental incapacity" based on "bacterial flesh eating symptom[s]" and attaches a doctor's prescription to her declaration. *See* Opp'n at 3; *see also* Wang Decl., Ex. C (prescription issued by Dr. Wong; appearing to prescribe a cream to be applied to the affected area). In her declaration, she also claims that she "had [a] very high fever on and off at that time." Wang Decl. ¶ 3. Even if the Court were to credit this information, that does not explain why Ms. Wang took eight months (*i.e.*, until August 2019) to file her Title VII action in federal court. As the City points out, Ms. Wang managed to file her suit in state court in late 2018/early 2019. *See* Def.'s RJN, Ex. B (state court complaint). If she successfully managed to file her suit in state court, she should have been able to do the same in federal court. *Cf. Brown v. Dep't of Navy*, No. 90-55789, 1992 U.S. App. LEXIS 7378, at *9 (9th Cir. Apr. 14, 1992) (noting that "[i]t would have been impossible for Brown to serve the Navy in a timely fashion after she received the return of service"; "[i]n such a circumstance, equitable tolling will operate to give her a reasonable time in which to effect service [but] Brown made no attempt to serve the Navy within a reasonable time after receiving notice that such service was required," and so "she cannot benefit from the equitable tolling doctrine").

However, to the extent Ms. Wang argues for equitable tolling because of confusing and/or incorrect information provided by the EEOC, the Court shall give Ms. Wang leave to amend because it is not clear that this position would be futile. Ms. Wang indicates that the situation was confusing because, on the same day that the EEOC issued the Notice of Right to Sue, it sent her a

letter stating that "the investigation [had] just started" on her charge of discrimination. Wang Decl. ¶ 3. Ms. Wang further argues that the EEOC gave her bad information – *i.e.*, when she called the EEOC (presumably, to clear up her confusion), she was told that she had "one year to file." Wang Decl. ¶ 3.

In its reply brief, the City argues that

> it is not believable that the EEOC would misstate the federal statutory deadline to file her lawsuit. It is far more likely that if this conversation occurred, it was with California's Department of Fair Employment and Housing ("DFEH"), which would have very likely advised a claimant that they [sic] had one year to file state claims under California's Fair Employment and Housing Act ("FEHA"), per the then[-]applicable Cal. Government Code section 12965.

Reply at 2. While the City may ultimately be right (or it may even be that Ms. Wang did call the EEOC and it told her that she had one year to file her *state* claims), on a motion to dismiss, the Court cannot resolve factual disputes. Therefore, the Court cannot say that Ms. Wang's claim for equitable tolling based on an EEOC mistake would be futile. *See, e.g.*, *Viveros v. United States Postal Serv.*, No. CV 10-8593 MMM (Ex), 2011 U.S. Dist. LEXIS 160753, at *13 n.34 (C.D. Cal. Dec. 8, 2011) (not ruling on equitable tolling issue but noting "the strong precedent in favor of not penalizing litigants for mistakes and misinformation from the EEOC"; citing cases from the Second and Eighth Circuits).

In summary, based on the face of the complaint, Ms. Wang's Title VII claims have a timeliness problem but the Court shall give Ms. Wang leave to amend to plead a basis for equitable tolling – in particular, based on confusing and/or incorrect information given by the EEOC. She must plead specific facts and those facts must be based on a good faith belief; she must comply with Federal Rule of Civil Procedure 11.[2] Ms. Wang is not allowed to assert equitable tolling on any other basis, including but not limited to alleged sickness.

2.  Equal Pay Act Claims

In addition to the Title VII claims, Ms. Wang asserts one other federal claim – *i.e.*, a claim for violation of the Equal Pay Act. The Equal Pay Act provides in relevant part as follows:

---

[2] *See also* Fed. R. Civ. P. 11(c) (providing that sanctions may be issued against a party who violates Rule 11).

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . *for equal work* on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d)(1) (emphasis added).  The Ninth Circuit has stated that, "[t]o make out a case under the Equal Pay Act, a plaintiff must prove that an employer is paying different wages to employees of the opposite sex for equal work." *Hein v. Or. Coll. of Educ.*, 718 F.2d 910, 913 (9th Cir. 1983); *see also Kevari v. Scottrade, Inc.*, No. CV 18-819-JFW(GJSx), 2018 U.S. Dist. LEXIS 227343, at *13 (C.D. Cal. Aug. 31, 2018) (stating that, "[t]o allege an Equal Pay Act claim, a plaintiff must allege facts showing that employees of the opposite sex are: (1) working in the same establishment; (2) doing work requiring equal skill, effort, and responsibility, and which is performed under similar working conditions; and (3) receiving unequal pay because of their sex"). According to the City, Ms. Wang has failed to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).

To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.* (internal quotation marks omitted).

Based on the allegations in the FAC, the Court agrees that Ms. Wang has not plausibly alleged an Equal Pay violation. For example:

- In her FAC, Ms. Wang indicates she was not given equal pay because she "was not allowed to have [the] same accommodation/budget [as] the similar male employees doing substantially equal work." FAC ¶ 77; *see also* FAC ¶ 10 (alleging that "she was not allowed to order supplies even though she had a supply budget to use"). In her opposition, she suggests that, as a result, she was forced to buy her own supplies, which included software and a laptop. *See* Opp'n at 5. But even if similarly situated male employees were allowed to use their budgets as they wished, there is no indication that their budgets were part of the compensation that they received from the City – *i.e.*, remuneration for employment. *See* 29 C.F.R. § 1620.10 ("Under the EPA, the term 'wages' generally includes all payments made to [or on behalf of] an employee as remuneration for employment.").

- In her FAC, Ms. Wang also indicates that she was not given equal pay because "she was not allowed to use [the] City's vehicle for business travel." FAC ¶ 10. According to Ms. Wang, "[o]n and off Nov. 1, [2017], she went to the sites . . . using [her] own car, . . . which she bought on the cost of about $16k to handle work and commute for this job only as her other car is not that reliable for . . . driving" on "treacherous, deteriorated roads." FAC ¶ 12. The federal regulations do indicate that "use of company car" can be a wage. 29 C.F.R. § 1620.10. They also indicate that certain business expenses can also be deemed a wage. The problem for Ms. Wang is that she does not allege in her complaint that (1) she asked the City to compensate her for the use of her personal vehicle for business purposes (*e.g.*, based on mileage incurred) and that (2) the City denied her request. Nor does she allege that the men who were allowed use of a company car (or who were given compensation for use of a personal vehicle) were similarly situated.

- In her FAC, Ms. Wang further suggests she was not given equal pay because "[s]he

was not allowed to stay overnight if the training was far away from the office." FAC ¶ 10. Section 1620.10 indicates that hotel accommodations can be a form of wage. But similar to above, Ms. Wang has not alleged in the complaint that (1) she paid for any hotel accommodations out of her own pocket, (2) she asked the City to compensate her for that expense, and (3) the City denied her request. Nor does she allege that male workers who were given hotel accommodations were similarly situated to her (*e.g.*, lived the same distance away).

The Court also notes that new assertions made by Ms. Wang in her opposition brief also do not support an Equal Pay claim – at least, not as they are currently framed. For example:

- In her opposition brief, Ms. Wang alleges for the first time that she was actually given a smaller salary compared to certain men: "[I]n the organizational chart, same level as Doug [Herron], [Greg] Folsom, etc., but she got about 50% less pay." Opp'n at 4. In its reply brief, the City argues that this is not an Equal Pay violation because Mr. Herron and Mr. Folsom had completely different titles and job duties from Ms. Grant (being, respectively, the Director of Public Works and the City Manager in contrast to City Engineer/Deputy Director of Public Works). The City raises a fair point. Given the different job titles, which suggests different job duties, there is not a sufficient basis to infer that Ms. Wang and the two men were doing "equal work on jobs the performance of which requires equal skill, effort, and responsibility." 29 U.S.C. § 206(d)(1).

- In her opposition brief, Ms. Wang alleges for the first time that she was not given a relocation fee (minimum of $5,000). *See* Opp'n at 5. Although this potentially could support a claim of differential wages, there is no indication that (1) other similarly situated male employees received relocation fees and (2) Ms. Wang and those men were doing "equal work on jobs the performance of which requires equal skill, effort, and responsibility." 29 U.S.C. § 206(d)(1).

Accordingly, the Court dismisses the Equal Pay claim as alleged. The Court shall give Ms. Wang leave to amend her Equal Pay claim but, if she does amend, she must do so in good faith

(*i.e.*, consistent with her obligations under Rule 11) and she must address the deficiencies identified above. Again she must allege in good faith specific facts. She may not amend, however, to assert an Equal Pay claim based on the claim that she "was not allowed to have [the] same accommodation/budget [as] the similar male employees doing substantially equal work." FAC ¶ 77.

### 3. Supplemental Jurisdiction

Because the Court is not, at this time, dismissing the federal claims with prejudice, it does not, at this time, decline supplemental jurisdiction over the state law claims.

### D. State Claims

Ms. Wang's state claims are as follows:

- Employment discrimination pursuant to FEHA (based on sex discrimination, race discrimination, and retaliation).
- IIED.
- Wrongful termination in violation of public policy.
- Negligent hiring, training, and retention.
- Breach of implied contract and/or covenant of good faith and fair dealing.

### 1. FEHA Claims

The City argues that the FEHA claims (and presumably the Title VII claims as well) are deficient because they are conclusorily pled. The specific FEHA claims at issue are as follows: sexual harassment/quid pro quo; sexual harassment/hostile work environment; retaliation; and race discrimination. It is difficult to understand why the City is contending that these claims are not pled with sufficient specificity. For example, it is clear why Ms. Wang asserts a quid pro quo sexual harassment claim based on the alleged conduct of her supervisor, Mr. Herron. The Court therefore denies the motion to dismiss the FEHA claims.[3]

---

[3] In so ruling, the Court is not expressing any opinion on whether, *e.g.*, the sex harassment claims against Mr. Folsom (in contrast to Mr. Herron) are plausible and whether the race discrimination claim (which seems to be a claim for racial hostile work environment) is supported by sufficient allegations of severe or pervasive conduct.

United States District Court
Northern District of California

2.      **IIED**

The City challenges the IIED claim on various grounds – *e.g.*, (1) it is conclusorily pled; (2) Ms. Wang failed to present the IIED claim to the City as required by the California Tort Claims Act ("CTCA"); and (3) the claim is barred by workers' compensation preemption.

The first argument is weak because the IIED claim seems to be based on the employment discrimination claims, and the basis for those claims is sufficiently clear (*i.e.*, there are nonconclusory allegations in support of the claims).

The City's third argument is also problematic. The City correctly notes that, in *Miklosy v. Regents of University of California*, 44 Cal. 4th 876 (2008), a whistleblower retaliation case, the California Supreme Court found that an IIED claim was not viable because of workers' compensation law.

> Plaintiffs allege defendants engaged in "outrageous conduct" that was intended to, and did, cause plaintiffs "severe emotional distress," giving rise to common law causes of action for intentional infliction of emotional distress. The alleged wrongful conduct, however, occurred at the worksite, in the normal course of the employer-employee relationship, and therefore workers' compensation is plaintiffs' exclusive remedy for any injury that may have resulted.
>
> *Shoemaker v. Myers* is of particular relevance here because it involved termination of a whistleblower employee. We said: "To the extent plaintiff purports to allege any distinct cause of action, not dependent upon the violation of an express statute or violation of fundamental public policy, but rather directed at the intentional, malicious aspects of defendants' conduct … , then plaintiff has alleged no more than the plaintiff in *Cole v. Fair Oaks Fire Protection Dist.* . . . . The kinds of conduct at issue (e.g., discipline or criticism) are a normal part of the employment relationship. Even if such conduct may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions." We reaffirmed this holding in *Livitsanos v. Superior Court*, which also involved a terminated employee: "So long as the basic conditions of compensation are otherwise satisfied (Lab. Code, § 3600), and the employer's conduct neither contravenes fundamental public policy *nor exceeds the risks inherent in the employment relationship*, an employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation."

*Id.* at 902 (emphasis omitted and added).

But *Miklosy* is not dispositive with respect to instant case because, as noted above, *Miklosy*

was a whistleblower retaliation case and here Ms. Wang's IIED claim seems to be based on employment discrimination – which is not a normal part of an employment relationship. *See, e.g.*, *Hardin v. Mendocino Coast Dist. Hosp.*, No. 17-cv-05554-JST, 2018 U.S. Dist. LEXIS 100238, at *25-26 (N.D. Cal. June 13, 2018) (holding that IIED claim was not barred by workers' compensation exclusivity because claim was based on employment discrimination and retaliation); *Silva v. Solano Cty.*, No. 2:13-cv-02165-MCE-EFB, 2014 U.S. Dist. LEXIS 154362, at *9 (E.D. Cal. Oct. 29, 2014) (stating that, "[w]here an employer's illegal discriminatory practices cause emotional distress to an employee, the law is clear that such distress is not barred by workers' compensation exclusivity"); *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1155 (1998) (indicating that "compensation bargain cannot encompass conduct, such as sexual or racial discrimination, obnoxious to the interests of the state and contrary to public policy and sound morality") (internal quotation marks omitted); *Light v. Cal. Dep't of Parks & Rec.*, 14 Cal. App. 5th 75, 101 (2017) (stating that "unlawful discrimination and retaliation in violation of FEHA falls outside the compensation bargain and therefore claims of intentional infliction of emotional distress based on such discrimination and retaliation are not subject to workers' compensation exclusivity"); *Accardi v. Superior Court*, 17 Cal. App. 4th 341, 352 (1993) (stating that "a claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices").

Nonetheless, the City's second argument has merit. The CTCA generally provides that "all claims for money or damages against local public entities" "shall be presented" to the public entity before an individual may file an action against the public entity. Cal. Gov't Code § 905; *see also id.* § 945.4 (providing that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board"). There is no indication in the FAC that Ms. Wang presented her claim to the City prior to filing suit, and, in her opposition, Ms. Wang does not make any assertion that she did in fact present her claim. Rather, in her opposition, Ms. Wang suggests that she is "excused from the requirements of the Government Claims Act," Opp'n at 6, but the

basis of that argument is unclear.  She mentions equitable tolling for her employment

discrimination claims (Title VII at least) but that has nothing to do with her *separate* claim for

IIED; filing a claim under the CTCA is different and distinct from filing claims with the EEOC or

DFEH.

The Court therefore dismisses the IIED claim based on the failure to present.  The

dismissal is with leave to amend if Ms. Wang can, in good faith (*i.e.*, consistent with her Rule 11

obligations), assert that she did present a claim to the City or that she has a valid basis for not

complying with the presentment requirement.

3.    Wrongful Termination

The City moves for dismissal of the wrongful termination claim on various grounds – *e.g.*,

(1) it is only conclusorily pled; (2) such a claim cannot be asserted against a public entity; and (3)

Ms. Wang failed to present the claim to the City as required by the CTCA.  Here, the Court need

only entertain the second argument.

As the City points out, the California Supreme Court has held that a claim for wrongful

termination is not available against a public entity.  *See Miklosy*, 44 Cal. 4th at 899.  In *Miklosy*,

the Court explained as follows:

> The Government Claims Act (§ 810 et seq.) establishes the limits of
> common law liability for public entities, stating: "Except as
> otherwise provided *by statute*: [¶] (a) A public entity is not liable for
> an injury, whether such injury arises out of an act or omission of the
> public entity or a public employee or any other person."  (§ 815,
> subd. (a), italics added.) The Legislative Committee Comment  to
> section 815 states: "This section abolishes all common law or
> judicially declared forms of liability for public entities, except for
> such liability as may be required by the state or federal constitution,
> e.g., inverse condemnation. …"  (Legis. Com. com., 32 West's Ann.
> Gov. Code (1995) foll. § 815, p. 167, italics added.)  Moreover, our
> own decisions confirm that section 815 abolishes common law tort
> liability for public entities.  (*See Eastburn v. Regional Fire
> Protection Authority* (2003) 31 Cal. 4th 1175, 1179; *Zelig v. County
> of Los Angeles* (2002) 27 Cal. 4th 1112, 1127-1128; *see also Adkins
> v. State of California* (1996) 50 Cal. App. 4th 1802, 1817-1818;
> *Michael J. v. Los Angeles County Dept. of Adoptions* (1988) 201
> Cal. App. 3d 859, 866-867.)

*Id.* (emphasis in original).

*Miklosy* remains good law on this issue.  *See, e.g.*, *Johnson v. City & Cty. of S.F.*, No. 16-

cv-02913-SI, 2017 U.S. Dist. LEXIS 166377, at *21-22 (N.D. Cal. Oct. 6, 2017) (agreeing that "plaintiff's claim is barred under the California Government Code because plaintiff cannot assert a common law claim for wrongful termination in violation of public policy against a public entity"; citing *Miklosy* and § 815). Moreover, none of the cases cited by Ms. Wang indicate to the contrary. *See, e.g.*, *Derby v. City of Pittsburg*, No. 16-cv-05469-SI, 2017 U.S. Dist. LEXIS 25660, at *23 (N.D. Cal. Feb. 23, 2017) (noting that, "[u]nder the Government Claims Act, public entities are not liable for injuries arising from acts or omissions of the public entity except as provided *by statute*"; one "statutory exception can be found in Government Code § 815.6, which provides[:] 'Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that is exercised reasonable diligence to discharge the duty'") (emphasis added). Ms. Wang has not asserted a wrongful termination claim based on a statute.

Moreover, for the reasons stated above, Ms. Wang failed to comply with the CTCA. The Court thus dismisses the claim for wrongful termination with prejudice.

### 4. Negligent Hiring, Training, and Retention

The City moves to dismiss the claim for negligent hiring, training, and retention based on several grounds: (1) the claim is conclusorily pled; (2) Ms. Wang failed to present the claim to the City as required by the CTCA; and (3) the claim is barred by workers' compensation preemption.

The City's first argument is not without some merit. Although the FAC indicates that the negligence claim is based on the City's failure to train (*e.g.*, with respect to sex and race discrimination), *see* FAC ¶¶ 53-54, Ms. Wang does not provide any specific information about the alleged failure to train, other than the fact that the discrimination occurred and that a "proper investigation" was not conducted into her complaints about discrimination.

The second argument also has merit for reasons similar to those stated above (on the IIED claim).

However, the Court rejects the third argument. Several courts have found that a defendant's allegedly negligent "failure to fulfill its duty to prevent sexual harassment [is] conduct

16

that falls outside the normal risk of the compensation bargain." *Evans v. Hard Rock Cafe Int'l (USA), Inc.*, No. 2:07-cv-1074 FCD DAD, 2007 U.S. Dist. LEXIS 70432, at *12 (E.D. Cal. Sep. 24, 2007); *see also Muniz v. UPS*, 731 F. Supp. 2d 961, 976 (N.D. Cal. 2010) (Wilken, J.) (noting that plaintiff's claim for negligent hiring, training, and supervision "rests on facts supporting her claim for general discrimination" and therefore is not preempted by the California Workers' Compensation Act).

The Court therefore dismisses the negligence claim based on failure to state a claim for relief and failure to comply with the CTCA presentment requirement. The dismissal is with leave to amend (*e.g.*, if Ms. Wang can provide more specificity and if she can, in good faith, assert that she did present a claim to the City or that she has a valid basis for not complying with the presentment requirement).

5.    Breach of Implied Contract or Implied Covenant.

For Ms. Wang's claim for breach of implied contract or implied covenant, the City makes the following arguments: (1) the claim is conclusorily pled; (2) "'no public employee has a vested right to continue in public employment beyond the time or contrary to the terms and conditions fixed by law,'" Mot. at 9 (quoting *Miller v. State of Cal.*, 18 Cal. 3d 808, 813 (1977)); and (3) Ms. Wang failed to present her claim to the City as required by the CTCA.

The Court rejects the City's first argument. Ms. Wang has alleged that she had an employment agreement with the City under which she would not be disciplined or terminated "except for good cause and with notice and an opportunity to be heard" and under which she "would be evaluated in a fair and objective manner and afforded progressive discipline." FAC ¶ 64. She has also alleged that the "employment agreement was evidenced in various written documents, including but not limited to defendant's employee handbook and personnel policies and procedures." FAC ¶ 65.

The Court also rejects the City's second argument. As noted above, the City bases its second argument on *Miller*. In *Miller*, the plaintiff had been a civil servant employed by the state. He brought a mandamus action and an action for breach of contract against the state when he was forced to retire at the age of 67 pursuant to an amendment to a state statute (instead of age 70 as

17

provided in the statute when he first entered state service many years earlier).

> If the compulsory age of retirement had not been reduced from 70 to 67, plaintiff would have been permitted to continue in state employment until September 1, 1977. Had he done so, remaining in his final position and receiving salary increases as the Legislature provided, his retirement pension at age 70 based on the benefit factor in effect under former law would have been at least $ 2,365 per month [which was more than he was receiving under the current law having been forced to voluntarily retire at age 67].

*Id.* at 812.

The California Supreme Court in *Miller* first addressed the plaintiff's argument that he had "a vested, *contractual* right based on the mandatory retirement age in effect when he was first employed by the state, to continue in state service until age 70." *Id.* at 813 (emphasis in original). The Court rejected the argument, stating as follows:

> [I]t is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law. . . .
>
> In view of these long and well settled principles, we conclude that the power of the Legislature to reduce the tenure of plaintiff's civil service position and thereby to shorten his state service, by changing the mandatory retirement age was not and could not be limited by any contractual obligation.

*Id.* at 813-14; *see also Bernstein v. Lopez*, 321 F.3d 903, 906 (9th Cir. 2003) (stating that "neither an express nor an implied contract can restrict the reasons for, or the manner of, termination of public employment provided by California statute").

*Miller*, however, does not stand for the proposition that a public employment relationship is governed only by statute. Indeed, in *Retired Employees Association of Orange County, Inc. v. County of Orange*, 52 Cal. 4th 1171 (2011) – a post-*Miller* decision – the California Supreme Court rejected the proposition that "public employee compensation is strictly limited to that which is expressly provided in a statute or ordinance" and explained that "'[g]overnmental subdivisions may be bound by an implied contract if there is no statutory prohibition against such arrangements.'" *Id.* at 1180-81. The Court also indicated that *Miller* and similar cases stood simply stood for the principle that "'the law does not recognize implied contract terms that are at

18

variance with the terms of the contract as expressly agreed or as prescribed by statute.'" *Id.* at 1181. (In *Retired Employees*, the Court went on to give the cautionary note that "our 'often quoted language that public employment is not held by contract' has limited force where . . . the parties are legally authorized to enter (and have in fact entered) into bilateral contracts to govern the employment relationship." *Id.* at 1182 (noting, *e.g.*, that local governments are authorized to meet and confer with employee bargaining units).)

In the instant case, the City does not point to any conflict between the implied contract terms asserted by Ms. Wang and any statute. Hence, *Miller* is not a bar to Ms. Wang's implied contract/covenant claim.

While, for the reasons stated above, the City's first and second arguments lack merit, its final argument – based on the CTCA presentation requirement – is valid. *See, e.g.*, *City of Stockton v. Superior Court*, 42 Cal. 4th 730, 737-38 (2007) (holding that contract claims are subject to the CTCA's presentment requirement; adding that the CTCA is better referred to as the Government Claims Act "to reduce confusion"); *Loehr v. Ventura Cty. Cmty. Coll. Dist.*, 147 Cal. App. 3d 1071, 1079 (1983) (stating that "[a]ctions for breach of contract also fall within the scope of claims for 'money or damages'"). That is, there is no indication in the FAC that Ms. Wang presented her claim to the City prior to filing suit, and, in her opposition, Ms. Wang does not make any assertion that she did in fact present her claim.

Accordingly, the Court dismisses the implied contract/covenant claim based on the failure to present. The dismissal is with leave to amend if Ms. Wang can, in good faith, assert that she did present a claim to the City or that she has a valid basis for not complying with the presentment requirement.

### 6. Punitive Damages

The City's final argument is that, for the state claims at least, punitive damages against it, as a public entity, are not available.[4] The City is correct. California Government Code § 818

---

[4] The City does not clearly make an argument that punitive damages are unavailable against it under Title VII or the Equal Pay Act. *See Harvey v. City of San Diego*, No. 09-CV-0740 DMS (RBB), 2009 U.S. Dist. LEXIS 140911, at *7 (S.D. Cal. Aug. 17, 2009) (stating that "punitive damages are not available against municipalities in Title VII claims" pursuant to 42 U.S.C. §

provides: "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code [*i.e.*, punitive damages] or other damages imposed primarily for the sake of example and by way of punishing the defendant." Cal. Gov't Code § 818. *See, e.g.*, *Williams v. Lorenz*, No. 15-cv-04494-BLF, 2018 U.S. Dist. LEXIS 190023, at *9 (N.D. Cal. Nov. 5, 2018) (stating that "the California Supreme Court has interpreted § 818 to prohibit awards of punitive damages against municipalities in cases involving FEHA claims").

Ms. Wang's citation to California Government Code § 825 is unavailing. Section 825(a) includes the following provision: "Nothing in this section authorizes a public entity to pay that part of a claim or judgment that is for punitive or exemplary damages." *Id.* § 825. So too is Ms. Wang's reliance on California Government Code § 820.2, which simply provides that, "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." *Id.* § 820.2.

The Court therefore dismisses all claims for punitive damages against the City.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, the Court defers in part, grants in part, and denies in part the City's motion to dismiss. More specifically:

- The Court defers ruling on the motion to dismiss or stay pursuant to the *Colorado River* doctrine. It is the Court's understanding that Ms. Wang will dismiss her state court action, in which case the *Colorado River* argument will be moot.

- The Court dismisses the Title VII claims because the face of the complaint indicates that there is a time bar. Ms. Wang, however, has leave to amend her Title VII claims to assert equitable tolling – more specifically, based on confusing and/or incorrect information given to her by the EEOC. Ms. Wang is not allowed to assert equitable tolling based on any other grounds.

---

1981a(b)(1)); 29 U.S.C. § 216(b) (providing that "[a]ny employer who violates the provisions of section 206 or section 2017 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in additional equal amount as liquidated damages").

- The Equal Pay claim is dismissed but with leave to amend. In amending, Ms. Wang must address the deficiencies identified above, if she can do so in good faith (*i.e.*, consistent with her Rule 11 obligations).

- The FEHA claims are not conclusorily pled and therefore shall not be dismissed at this time.

- The claim for wrongful termination in violation of public policy is dismissed with prejudice under *Miklosy*.

- The remaining state law claims – for IIED, negligence, and breach of implied contract/covenant – are dismissed for failure to comply with the CTCA's presentment requirement. Ms. Wang has leave to amend if she can, in good faith (*i.e.*, consistent with her Rule 11 obligations), assert that she did present a claim to the City or that she has a valid basis for not complying with the presentment requirement. The negligence claim is also dismissed based on a failure to plead with sufficient specificity. If Ms. Wang amends the negligence claim, she must provide more specificity – *i.e.*, explain the factual basis of the claim.

- On punitive damages for the state claims, the City's motion to dismiss is granted.

Ms. Wang shall file an amended complaint by April 2, 2020. The City shall file its response to the amended complaint by April 23, 2020.

This order disposes of Docket No. 29.

**IT IS SO ORDERED**.

Dated: March 2, 2020

_____
EDWARD M. CHEN
United States District Judge